**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TYLER HENLEY,** | ) | |
| | ) | |
| **Plaintiff/Counterclaim Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-788-G** |
| | ) | |
| **MAZZELLA LIFTING TECHNOLOGIES, INC., an Ohio Corporation,** | ) | |
| | ) | |
| **Defendant/Counterclaimant.** | ) | |

**ORDER**

Plaintiff Tyler Henley initiated this case in state court on June 13, 2025. *See* Pet. Decl. J. (Doc. No. 1-2). Defendant Mazzella Lifting Technologies, Inc. ("Mazzella") then removed the case to this Court on the basis of diversity jurisdiction.

On August 20, 2025, Mazzella filed its Answer, Affirmative Defenses, and First Counterclaims (Doc. No. 21), raising four counterclaims against Plaintiff. Now before the Court is Plaintiff's Partial Motion to Dismiss (Doc. No. 25), seeking dismissal of two of Mazzella's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Mazzella has responded (Doc. No. 27), and Plaintiff has replied (Doc. No. 30).

*I. Federal Rule of Civil Procedure 12(b)(6)*

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "[T]o withstand a Rule 12(b)(6) motion to

dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

*II. Mazzella's Allegations*

Mazzella, an Ohio corporation, alleges that it initially hired Plaintiff, an Oklahoma resident, as a Branch Manager on March 1, 2017. *See* Def.'s Countercls. ¶¶ 1-2, 11.

In 2010, Mazella began researching, analyzing, and compiling detailed information about specialty wire rope and its compatibility with various makes and models of cranes. *Id.* ¶ 16. The compiled database for specialty wire ropes ("Specialty Rope Database") contains detailed specifications of cranes manufactured by competing crane manufacturers, crane locations, detailed wire rope specifications, capabilities, gauges, and suppliers, pricing, as well as the wire rope needs of competing crane manufacturers. *Id.* The Specialty Rope Database is not publicly available; it is stored on a password-protected and limited access Microsoft Teams site that is managed and controlled by Mazzella's president out of Cleveland, Ohio, and Mazzella's internal IT Department out of Mazzella's Data Center in Cleveland, Ohio. *Id.* ¶ 19. To develop, build and grow Mazzella's Specialty

Ropes business, Mazzella established a small and unique employee team (the "Specialty Ropes Team") who had access to the Specialty Rope Database. *Id.* ¶ 17. Plaintiff was a member of the Specialty Ropes Team. *Id.* ¶ 20.

In 2021, Plaintiff was promoted to Cranes Rope Specialist working within Mazzella's Crane Rope vertical market and began reporting directly to President Mazzella in Ohio. *Id.* ¶ 14. Shortly thereafter, Plaintiff became a National Account Manager as part of the Specialty Ropes Team. *Id.* ¶ 15. During his employment with Mazzella, Plaintiff had access to Mazzella's highly valuable company-wide, confidential, proprietary, and trade secret information. *Id.*

To protect Mazzella's information to which Plaintiff had access, Mazzella required Plaintiff to execute an agreement titled "Nondisclosure and Noncompetition Agreement" (the "NDNC Agreement"). *Id.* ¶ 12. By signing the NDNC, Plaintiff agreed to protect Mazzella's Confidential Information and acknowledged that the Confidential Information to which he was given access to "is, and will always remain, the exclusive property of [Mazzella]." *Id.* Plaintiff further acknowledged that Mazzella's Confidential Information is "highly valuable and unique to" Mazzella, that the Confidential Information gives Mazzella "a special advantage over its competitors," and that "any improper use or disclosure of Confidential Information would cause" Mazzella to suffer "serious and irreparable loss that would be difficult to compute and could not be remedied solely by a monetary award." *Id.*; *see id.* Ex. 1 (Doc. No. 21-1).

Due to the highly sensitive nature of the information to which the Specialty Ropes Team had access, all members of the Specialty Ropes Team, including Plaintiff, agreed to

a Specialty Ropes Confidentiality Agreement and Protocol (the "Specialty Ropes Confidentiality Agreement"). Def.'s Countercls. ¶ 20. The Specialty Ropes Confidentiality Agreement required Plaintiff to protect all information related to Mazzella's specialty ropes business by using it solely for the purpose of performing his duties for Mazzella, refraining from any disclosure or discussion with anyone not expressly authorized by Mazzella's president, and by implementing physical and electronic safeguards to maintain confidentiality. *Id.* Ex. 2 (Doc. No. 21-2).

On June 13, 2025, Plaintiff resigned from Mazzella. Def.'s Countercls. ¶ 25. Shortly thereafter, Plaintiff began working for Bishop Lifting Products, Inc. ("Bishop Lifting") as its Vice President of Business Development. *Id.* ¶ 26. In this role, Plaintiff serves as a part of Bishop Lifting's business leadership team and is responsible for strategic growth strategies and efforts. *Id.* Mazzella and Bishop Lifting identify themselves as direct competitors in the lifting industry. *Id.* ¶ 27. Within a few weeks of Plaintiff's employment with Bishop Lifting, Plaintiff began interacting with Mazzella's customers and suppliers, having contacted at least three (3) key suppliers, vendors, and key contacts in specialty ropes as well as some customers, all of which are known to him by virtue of his employment on Mazzella's Specialty Ropes Team and his access to Mazzella's Confidential Information. *Id.* ¶ 34. Mazzella's forensic investigation of Plaintiff's activities leading up to his resignation uncovered multiple instances of Plaintiff's improper access and ongoing possession of Mazzella's information. *See id.* Ex. 5 (Doc. No. 21-5).

The same day that Plaintiff resigned from Mazzella, he filed a Petition for Declaratory Judgment in Oklahoma state court, seeking a declaration that the non-compete

and non-solicit provisions of the NDNC Agreement are void and unenforceable. *See* Pet. ¶¶ 10, 13-21.

*III. Discussion*

Mazzella's Counterclaims against Plaintiff include: (1) breach of contract of both the NDNC and the Specialty Ropes Agreement; (2) misappropriation of trade secrets under the Defend Trade Secrets Act; (3) misappropriation of trade secrets under Ohio law; and (4) conversion under Ohio law. *See* Def.'s Countercls. ¶¶ 36-83.

Plaintiff now seeks dismissal under Rule 12(b)(6) of the counterclaims brought pursuant to Ohio law ("the Ohio Claims"). In his Motion, Plaintiff does not argue that Mazzella fails to state plausible claims for relief as pleaded. Rather, Plaintiff argues that the Ohio Claims should be dismissed because the law of Oklahoma, not Ohio, governs in this matter. *See* Pl.'s Partial Mot. to Dismiss at 4-7.

In diversity actions, choice of law is determined by the law of the forum state, in this case Oklahoma. *See Elec. Distribs., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir. 1999). "Oklahoma choice of law rules require the court to apply the tort law of the state with the most significant relationship to the occurrence and to the parties." *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999). Relevant factors include "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and

place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred." *Id.* at 1103-04 (internal quotation marks omitted).[1]

In support of dismissal, Plaintiff points to conduct and injuries that allegedly occurred in Oklahoma. *See* Pl.'s Partial Mot. to Dismiss at 5-6. The Court may not accept Plaintiff's version of events as presented in the Motion over Mazzella's well-pleaded factual allegations for purposes of Rule 12(b)(6), however. *See Burnett*, 706 F.3d at 1235; *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (internal quotation marks omitted)).

Mazzella argues that further discovery is required "to determine the full extent of [Mazzella's] injuries," as well as what confidential information Plaintiff "accessed, copied, used or disclosed," to decide which state has the most significant relationship to the claims and the parties. Def.'s Resp. at 18-19 ("Without further factual development, any choice-of-law determination would . . . unfairly prejudice Mazzella by improperly weighing [Plaintiff's] allegations more heavily against Mazzella's contrary evidence."). Although Plaintiff points to cases where the choice of law determination was made upon a motion to dismiss, the Court concurs with Mazzella that, in this instance, making that

[1] Oklahoma has not "determined whether the 'most significant relationship' test would apply to statutory claims." *Patten Air, LLC v. Howard*, No. CIV-18-4-F, 2018 WL 9837822, at *3 (W.D. Okla. Oct. 15, 2018). "However, courts typically treat statutory claims as claims sounding in tort in choice of law analyses." *Huddleston v. John Christner Trucking, LLC*, No. 17-CV-549, 2020 WL 489181, at *6 n.2 (N.D. Okla. Jan. 30, 2020).

determination at this early stage of litigation would require the Court to weigh competing contentions without the benefit of a sufficiently developed record. For example, it would be necessary to consider Plaintiff's unpled contention that "the alleged injury occurred in Oklahoma . . . because [Plaintiff] was working for Mazzella in Oklahoma" in light of Mazzella's express denial that Plaintiff was employed "as a sales representative in Oklahoma." Pl.'s Partial Mot. to Dismiss at 5; Def.'s Countercls. ¶ 3. This inquiry "would . . . be improper on a motion brought under Rule 12(b)" and "would be better reserved for summary judgment, where the Court has the benefit of a properly developed record." *Fed. Ins. Co. v. Indeck Power Equip. Co.*, No. CIV-15-941-D, 2016 WL 3676803, at *2 (W.D. Okla. July 7, 2016) (citing cases).

For these reasons, the Court declines to dismiss the Ohio Claims on this basis at this time. *See id.*; *Cooper v. Coil Chem.*, No. CIV-16-473-G, 2016 WL 7168235, at *3 (W.D. Okla. Dec. 8, 2016).

CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Dismiss (Doc. No. 25) is DENIED.

IT IS SO ORDERED this 28th day of September, 2026.

Charles B. Goodwin

CHARLES B. GOODWIN
United States District Judge